Good morning, Graham Ojalababa on behalf of Mr. Jatta. May it please the Court. Your Honors, with this record, no reasonable fact finder could find a fundamental change with respect to this particular petitioner. Mr. Jatta was a professor who taught about public administration in The Gambia, and his lectures touched on politics in ways that offended people. He spoke to his students about the importance of strong institutions as opposed to strong leaders. He was taken into custody by police, beaten so severely that he was taken for dead, detained for more than a month. The immigration judge found that this constituted past persecution on account of his political opinion. And the immigration judge then found that because there had been a change in the president of The Gambia, and also that that president had taken some steps toward improving human rights in the country, that there was a fundamental change in country conditions such that Mr. Jatta was not entitled to a well-founded fear of persecution, and his asylum was denied. So the immigration judge reached this conclusion of a change in country conditions because he did the analysis wrong in two important ways. One is that he didn't look carefully at the facts of this particular petitioner, which is required by the case law. And secondly, he applied the burden wrong, where... What's our standard of view? You think he didn't look at it? How do we, you know, we see what he looked at. Well... I mean, that's a huge uphill. It's a huge uphill, which this Court has demonstrated how to conduct this analysis in two cases, Awale and Bracek, which both are important to look carefully at here. Because what the judge was wrong in the way he did the analysis, because he looked at the changes that had occurred, and he said, there isn't evidence here that people like Mr. Jatta are being persecuted now under this new president. But the second case is Bracek? Yes, thank you. They are not ancient, but they are seriously aged. Right. I mean, the issue doesn't... I mean, I guess, Your Honor, as an immigration attorney, when we get a finding of past persecution based on political opinion, we're in pretty good shape for a grant of asylum. And so it doesn't happen very often that we get that finding, and then the judge finds a change of country conditions. And that's partly because the burden should be on the government and not on Mr. Jatta, which the judge in this case put the burden on Mr. Jatta. Because he... What I was saying is that the judge was looking... He didn't put the burden on him or just say that once the government put forth its evidence of changed conditions, that he had to rebut the government. He did not do that. He didn't even switch the analysis back to the petitioner. He never properly put the burden on the government, because he was looking for evidence that under the new president, there was persecution of people like Mr. Jatta, whereas, which is a Owhale, the judge or the court, this court reversed the board because this court found that there was minority ethnic clans that continued to be harassed. Harassed is not persecution, as I'm sure you know, but the Owhale court found that the continuation of harassment was enough to say that the government had not met its burden of a change. Likewise, in Brassic, the key language that's also cited by the government is that, quote, ethnic discrimination persisted. Ethnic discrimination is not persecution. The Brassic court did not require a fine. So, the immigration judge in this case was looking for some... The facts in the country condition, with some as supported, put a burden on Jatta to refute the changes made in the new administration. Well, and if that's the case, Your Honor, he met the burden. I mean, first, I would just highlight again the point that the burden's on the government to show a change, which I don't think there is with respect to this particular petitioner. Well, no, there was this with respect to this country. Right. But the case law requires that they do a particular analysis of... In cases that are 15 to 25 years old and they're... Well, those cases are reading the, I believe it's NML, the board, the controlling president from the agency that says how we go about this analysis. And, Your Honor, also to your point about it's his burden, the judge didn't go back and look at whether he'd met his burden, even if country conditions had changed, which he would have been able to meet. You had the leader of the country change, right? There are change conditions. Right. But not so fundamental to this particular petitioner's claim. Well, why not? He was... Well, because... I mean, the IJ basically found that, I think, correct me if I'm wrong, that in part, the trouble he ran into initially was because he was criticizing the current leadership of the country, right? Right. And the fact that the country changes necessarily applies to the reasons then why this individual was persecuted at that point. I mean, what else do you need there to make it individualized? Well, so the judge needed to look at the record, which included the fact that the petitioner had warrants for his arrest. And the IJ looked at that, right? But he dismissed it based on the fact that they were issued by the prior regime. He ignored the expert witness saying who was an expert and said... So you're just saying that the IJ misweighed the evidence the way I hear it. I'm saying he did the analysis wrong, which was contrary to law and... And we don't reverse for that reason. Well, you can reverse because substantial evidence does not support the finding that the IJ made, which with this record, it doesn't. The expert witness... Well, is there anything... I think it does. I mean, it clearly... Well, I would ask you to read these cases... Counsel, is there anything... ...Awala and Brastic, which show that this court has found in similar circumstances that the government had not met the burden for the change. Counsel, is there anything in the record to indicate that the persecution he suffered based on his governmental views were likely to continue under the new administration?  The expert witness says that he's at a high risk of maltreatment on official or extrajudicial basis in the record at 268, that people protesting the new government are being arrested, that politically motivated arrest of a lecturer at a university had occurred under the new government at 539, that harsh and potentially life-threatening prison conditions existed, there was an incident where people were killed when policemen opened fire on peaceful protesters. So... That's general. Well... That's not this petitioner. A lecturer at a university being arrested for political reasons is very specific. I thought you were talking about what's happened since he was long gone. No, this is in the record that it happened in the new administration. Then it didn't happen to him. But it will happen to him if he's returned. No, it won't. It will. The record reflects that it will. I'm sorry? That's totally speculative. And he can relocate. Well, he's entitled to a well-founded presumption, which the government didn't rebut. I'll save the rest of my time if that's okay. I have one question on... The government argues that the right to show persisting... Fail to afford and the right to show well-founded fear is not exhaustive. I'm sorry, can you repeat it, Your Honor? Well, it's your issue too. Jetta had a right to show a persisting well-founded fear of persecution and the government says you failed to exhaust that before the BIA. Well, the regulation requires the judge... In other words, you didn't appeal to the BIA... The attorney that wrote the board brief... Just don't interrupt me. Okay, I'm sorry. Your argument is what the IJ did. The government says you didn't argue that to the BIA, therefore we can't review it. That's a very good argument. So your response to that very good argument... The board incorporated the IJ's findings and... That's not... The issue of... If you didn't raise it, of course they did. The petitioner did raise the question of whether he... Of humanitarian asylum. In other words, would he be subjected to other serious harm? But that didn't raise this issue. That's a different issue. I think I... Respectfully, Your Honor, I think that... I can go back and study the appellate record. Because you're either not responding or not understanding my question. When, where, and how did you argue to the BIA sufficiently to preserve this... The IJ stopped too soon on the asylum analysis? Right. Well, so I think that it's sort of the question of whether there was a change. You're not going to give me a record cite, so your time's up.  Ms. Groff?  Good morning, Your Honors. And may it please the Court, Stephanie Groff, the Attorney General. Your Honors, petitioner here seeks to reframe his fear of future harm in numerous ways. That is an attempt to ask this Court to reweigh the evidence and defy substantial evidence. However, substantial evidence supports the agency's denial that petitioner's claim and petitioner's claim of procedural errors are either bellied by the record and un-exhausted, as Judge Loken just noted. Specifically, what we have here is that the immigration judge found that petitioner demonstrated past persecution on account of his imputed political opinion. What happened then is that the immigration judge properly shifted the burden to the Department of Homeland Security to rebut the presumption of well-founded fear. The immigration judge found that based on the evidence as a whole, which included not only the country conditions evidence, but also petitioner's own expert and petitioner's own statements, that DHS properly rebutted this presumption. At no point did petitioner, before the immigration judge, demonstrate that he had a claim separate and apart from his past persecution. Therefore, the immigration judge found that he was ineligible for asylum. And we believe that the record compels, does not compel, the contrary conclusion. And it's well-supported. Let me just first jump to the independent analysis, the un-exhausted argument that Judge Loken, you just noted, is in our brief. And I won't go into full extent since we did mention it. But I will note in overall procedural how it works. Is if a petitioner demonstrates past persecution, the regulatory presumption is in the regulations and DHS has this burden to rebut it. There is nothing in the case law in this court or in the board that says that if that is, that if it is rebutted, that it then has to then go to the non-citizen to have a separate claim and to go forward. What happened here specifically was based on the evidence. The immigration judge specifically found that DHS rebutted the presumption. There was no other argument and therefore found that he didn't meet his burden of proof. What did that evidence characterize? It seems under the administration where the immigrant was fearful and departed the country, there were specific concerns about his safety and being arrested, being persecuted. A new administration coming in, what is there in the record to indicate that the views of the new administration, not just that it's new and not just that it's different people, but that there's actually different policy that would cause a reasonable person to think, I'm free now to speak? Sure. Specifically, if you look at petitioner's own expert declaration, the expert didn't testify, there is at page AR253 a discussion of the change in the secret state, the National Intelligence Agency, and the expert specifically says that this new government has started arresting employees of this former NIA, now SIS, under President Jama, and that it's likely that those arrests are going to be followed by proceedings. So that's specific to those that, who Mr. Jada himself said he was persecuted by, that this new president has acknowledged multiple times that there was a problem and is taking direct action to arrest those. I'll also note... The warrants issued against him eliminated? I do not know if the expert herself got into warrants being, warrants specifically, but I'll also note that the Human Rights Watch report, which is at AR353 of the record, specifically talked about how the country conditions and human rights in The Gambia has significantly improved dramatically, as it says, that Barrow has taken steps, the new president, to reverse what President Jama did, and that it talks about how Jama has left, and that political prisoners have been released that were arrested under the Jama administration, and are being freed from this wrongful detention. And so the immigration judge here looked at the evidence as a whole. I mean, this court was held before the department and rebutting this presumption can rely on State Department reports, but here the judge looked at more than that. State Department reports the expert petitioner's own testimony that he's not as afraid to return in holding that DHS rebutted its presumption. And the claim that the immigration judge then needed to keep the record open to allow the petitioner to add more evidence and create a new claim, again, was not raised to the board and is unexhausted. But even if this court were to reach it, which it shouldn't, there's no requirement that the judge continue testimony, have another hearing, and petitioner here at no point has raised a claim that's independent from that past persecution. Importantly, with the rebuttable presumption, when it comes to well-founded fear, it's important to note that the past instance serves as an evidentiary proxy for the future. So what we're looking at here is his past harm in detention based on this imputed political opinion. Any claims that he has raised in his briefs related to the warrants for my arrest or I was a public servant and if I flee, they're going to arrest me because of that, I didn't get permission, that is not tied to the evidentiary proxy of his past persecution. That is not based on an imputed political opinion and this court can't look at that. I want to note, I'll turn to more recent cases as Judge Loken noted that some of the cases cited by my friend on the other side are a bit outdated. Two that I believe still not are super recent but very helpful are Degbe v. Sessions which is this court's case in 2018 and there, Judge Mishley were on that panel, the court upheld the finding that DHS successfully rebutted the presumption of future persecution based on multiple successful elections in Ghana and found that, you know, despite petitioner's claim there that, you know, oh this isn't enough and there's still some evidence of corruption and misrep that overall the record did not compel a contrary conclusion that DHS did rebut this presumption. We think that that's really helpful here, especially in reiterating the standard of review. This is not something, it may be possible that there are different ways that this evidence can be weighed but the Supreme Court's decision in Garland v. Ming Dai recently reaffirmed that for substantial evidence the record needs to compel a contrary conclusion not just that one way may be weighed against the other and here the immigration judge thoroughly looked at everything the board upheld this, there was a particularized analysis in finding that DHS successfully rebutted the presumption. I'll also note that in Momwe v. Holder is a case from 2009 so not as recent but there the government also successfully rebutted the presumption and DHS, sorry, and this court upheld that finding. There, there's an important quote that says that this exaggerated description of post-war conditions in Angola is besides the point in so much as a general state of unrest is insufficient for persecution and that's what we have here. There have been a lot of claims that, you know, JAMA is still tied to borrow and that maybe things aren't as good as it could be but that's not what happened here. The judge looked at the record evidence as a whole, found that the particular harm that Mr. Jada experienced in the past was rebutted by DHS and we believe that the record does not compel a contrary conclusion. I will also just note for the record that any, in petitioner's briefing said he is eligible for humanitarian asylum based on the other serious harm prong, that was not raised before the board and not before the immigration judge. Therefore, this court shouldn't rule on that. However, humanitarian asylum based on the severity of past harm is before this court and we would argue that the record does not compel a contrary conclusion. Thank you so much. If you don't have any further questions, but you do. I take it whether the country conditions rebuts the presumption is not at issue. It's only whether it was established. Whether the country... As the Supreme Court said that that's a... Is reviewed under substantial evidence, you mean? Sorry, could you ask that again? Well, what's the fundamental change in circumstances doctrine that we're debating? The regulation. Is that a core Supreme Court doctrine? Is it in the statute? What's its source? Sure. The rebuttable presumption actually comes from the regulation. I know where that... I mean, this is... We're in an Elias Sicarius circuit.  what's the source of fundamental change being a proof that rebuts? What's the source? Like the case? Yeah. It could be in the statute. These statutes, you know, take many pages. They do, Your Honor. I will... I may need to double-check, but I do know that... I don't think it's an issue, and counsel and rebuttal can... Well, I do know that the INA does state, which is the statute, that it is the Petitioner's burden to establish his eligibility for asylum. The regulations then take that and have decided that there is this rebuttable presumption for past persecution. And so in looking at both of those, this Court, in numerous cases, has held that DHS is meant to that. I understand that, but that fundamental change is sufficient to rebut? Yes, Your Honor. To originate it somewhere and now become accepted or whatever. Yes, I... With the BIA, then it's reviewable. Yes, I'm not 100% sure. I do know it's in the regulation. That's fine. I'm just making trouble. That's okay. I actually teach asylum law, so I should probably know that. Thank you so much. Thank you.  I don't know very much, sir. I'll give you a minute and a half, because maybe you can answer my last question. You don't contest that fundamental change in circumstances rebuts the presumption? No. If properly established. Right, exactly. I think the case, matter of NMA, which is a Board case from 98, which I cite at page 31 of my opening... Sounds familiar. So that's where the Board says that the judge has to make an individualized analysis. And so that's the case that's sort of the seminal, like, way that we do the analysis. And to your question about the expert and the warrants, the expert does address that Mr. Giotto would be at risk viewed as having absconded while under this, in that situation at page 287. In my reply at 15 and 16, I cite the expert talking about that Mr. Giotto is at risk of harm. And the immigration judge completely ignored the expert witness. And so the country conditions are there, which show there was a change in administration. But the expert, whose job it is to tell the court about the particularities of this person in this country, says he's still at risk and gives very specific reasons that are tailored to him. And the judge doesn't look at that. And so given that record, there's not substantial evidence to support the judge's finding. So I think this case, we don't need to get to humanitarian asylum because with the NMA analysis, the government didn't meet their burden to show a fundamental change. The cases Degbae also deal with a situation that was many elections and many years ago. Whereas this was one election that happened and a very short time had passed. It's distinguishable from Degbae and from the other case, Malombe, which the persecution had occurred in the 80s. Well, in this case, there's a transition happening. And so it's not that there's a stable change like there was in Degbae. There's not a stable change. There's still risk to people like him. Thank you very much.